## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

GLADYS BAILEY, as the Administratrix of
the Estate of DEBBIE BAILEY, deceased, and
DOMINICK BAILEY, DEMETRIA BAILEY,
Individually and as Guardian for AMBER
BAILEY, a minor, and TIA BAILEY,

               Plaintiffs,

      v.

RONALD I. LEBMAN, M.D., DELMARVA
EMERGENCY PHYSICIANS, LLP and
BAYHEALTH MEDICAL CENTER, INC.,
d/b/a KENT GENERAL HOSPITAL,

               Defendants.

C.A. No. 04-1540 GMS.

JURY TRIAL BY TWELVE PERSONS
DEMANDED.

### DEFENDANTS' BRIEF IN OPPOSITION TO
### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

PRICKETT, JONES & ELLIOTT, P.A.
BY: MASON E. TURNER, JR., NO. 661
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DE  19899-1328
(302) 888-6508
ATTORNEY FOR DEFENDANT
BAYHEALTH MEDICAL CENTER, INC.
DELMARVA EMERGENCY PHYSICIANS, LLP
AND RONALD I. LEBMAN, M.D.
E-MAIL: METURNER@PRICKETT.COM

DATED:    May 25, 2006.

## Table of Contents

Table of Contents:                                                          i

Table of Authorities:                                                       ii

Nature and Stage of the Proceedings:                                        1

Statement of Facts:                                                         2

Summary of Argument:                                                        4

ARGUMENT:

      I.     THE UNDISPUTED EVIDENCE DOES NOT ESTABLISH
THAT DEFENDANTS FAILED TO PROVIDE APPROPRIATE
MEDICAL SCREENING AND STABILIZING TREATMENT
SUCH AS TO ESTABLISH A VIOLATION OF EMTALA.
                                          5


      II.    EMTALA DOES NOT AUTHORIZE PRIVATE CIVIL
ACTIONS AGAINST INDIVIDUAL PHYSICIANS.
                                          9

Conclusion:                                                                 9

## Table of Authorities

Cases:                                                                    Page:
Baber v. Hospital Corp. of America, 977 F.2d 872, 880 (4th Cir. 1992):      6,7,8

Bryan v. Rectors and Visitors of University of Virginia, 95 F.3d 349, 351
 (4th Cir. 1996):                                                          5

Cleland v. Bronson Health Care Group, Inc. 917 F.2d 266, 268 (6th Cir. 1990):   6

Delaney v. Cade, 986 F.2d 387, 393-4 (10th Cir. 1993):                     8

Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256-7 (9th Cir. 1995)"    8

Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1041
 (D.C. Cir. 1991):                                                           5,8

Gerber v. Northwest Hospital Center, Inc., 943 F.Supp. 571, 577
 D. Md. 1996                                                                 7

Hussain v. Kaiser Foundation Health Plan, 914 F.Supp. 1331, 1334
 (E.D. Va. 1996):                                                            5

King v. Ahrens, 16 F.3d 265, 271 (8th Cir. 1994):                          8

Marshall v. E.Carroll Parish Hospital Service District, 134 F.3d 319, 322
 (5th Cir. 1998):                                                          5,6,7

Mazurkiewicz v. Doylestown Hospital, 223 F.Supp. 2d 661, 666-7
 (EDPA 2002):                                                                8

Power v. Arlington Hospital Ass'n, 42 F.3d 851, 856 (4th Cir. 1994):       5

Summers v. Baptist Medical Center Arkadelphia, 91 F.3d 1132 (8th Cir. 1996)   7

Vickers v. Nash General Hospital, Inc., 78 F.3d 139, 141 (4th Cir. 1996):  5,6


Authorities:

42 U.S.C. §1395cc:                                                           1

42 U.S.C. §1395dd(a):                                                        7

## NATURE AND STAGE OF PROCEEDINGS

This is a wrongful death action predicated upon claimed medical negligence in connection with an Emergency Department presentation of the decedent, Debbie Bailey, to Kent General Hospital in Dover, Delaware, on January 19, 2003.

In addition to claims of medical negligence, plaintiffs claim that the defendants violated the federal transfer law, EMTALA, 42 U.S.C. §1395cc.  Plaintiffs have moved for Partial Summary Judgment arguing that the undisputed facts establish the existence of an EMTALA violation and this is defendants' brief in opposition to that motion.

## STATEMENT OF FACTS

The decedent, Debbie Bailey, a 41-year old woman presented to the Kent General Hospital Emergency Department at 8:26 p.m. on January 19, 2003 with a complaint of chest pain and shortness of breath which she said had persisted for a week.  The patient was brought into the treatment area shortly before 9:00 p.m. and an EKG was immediately performed and interpreted by defendant Doctor Lebman, an emergency physician.  While the EKG had some non-specific abnormalities, it was not diagnostic of an acute myocardial infarction.

Following the EKG, the nursing staff drew blood which was sent to the laboratory for analysis and initiated an intravenous line providing fluids to the patient.  Dr. Lebman performed a history and physical at 9:25 p.m. and documented a variety of potential causes for the plaintiffs' complaints.  (Emergency Physicians Record attached as Exhibit A).  He ordered that the patient be given nitroglycerin, which is often successful in relieving cardiac related chest pain.  As is standard, he ordered that she be given three doses.  The first dose was administered at 9:29 p.m. and at 9:35 the patient reported that she had received no relief.  The second dose was given at 9:35 and at 9:45 the patient again reported no improvement.  As a result, Dr. Lebman, whose differential diagnoses included gastrointestinal problems, ordered a GI cocktail and Ativan to see if this would relieve the patient's discomfort, nitroglycerin not having been effective.  These medications were administered at 9:50 p.m. and are known to take approximately 30 to 45 minutes to take effect.  (Lebman Depo. 122-3, Exhibit B)

Following the performance of the EKG, the patient was put on a cardiac monitor, which provides electrical information concerning heart function through leads that are placed on the patient's body.  If the leads come off or are taken off, a "leads off alarm" will sound both at the bedside and at the central nursing station.  The patient repeatedly removed the leads according to

2

the nursing staff which had to reapply them each time. (Little Depo. 125, Exhibit C; McLean Depo. 22-5, Exhibit D; Eberly Depo. 26-8, Exhibit E). At some point, the leads off alarm at the central nursing station was silenced, which the equipment permitted.

The patient was noted to be unresponsive at 10:20 p.m. and a resuscitation was initiated. The patient's leads were off at the time (Little 135-6; Exhibit C) she was found and because the alarm had been silenced, the central nursing station was not aware of that. The resuscitation was unsuccessful and the patient died.

Upon complaint of the plaintiff herein, the Delaware Health & Social Services Office of Health Facilities Licensing and Certification, which has jurisdiction to investigate and make findings of EMTALA violations, investigated the circumstances of this case many months after its occurrence and found two deficiencies relating to the silencing of the alarm at the central nursing station and the amount of time between the last nursing contact with the patient and the patient being found unresponsive. See Exhibit H to plaintiff's legal memorandum. It did not find an EMTALA violation.

## SUMMARY OF ARGUMENT

1.      A medical screening examination in compliance with EMTALA was conducted and steps to diagnose and stabilize the patient had been implemented at the time the patient died. There is certainly not uncontradicted evidence that the patient received disparate treatment that implicates EMTALA.

2.      EMTALA does not permit private claims against physicians such as defendant Doctor Lebman.

ARGUMENT

## I. THE UNDISPUTED EVIDENCE DOES NOT ESTABLISH THAT DEFENDANTS FAILED TO PROVIDE APPROPRIATE MEDICAL SCREENING AND STABILIZING TREATMENT SUCH AS TO ESTABLISH A VIOLATION OF EMTALA.

The Emergency Medical Treatment and Active Labor Act ("EMTALA") was enacted in response to growing concern about reports that hospital emergency rooms were refusing to accept or treat patients with emergency medical conditions and was designed to remedy a deficiency under state law that did not impose a duty on hospitals to treat individuals that sought emergency medical care at hospital emergency departments. Hussain v. Kaiser Foundation Health Plan, 914 F.Supp. 1331, 1334 (E.D. Va. 1996). Congress enacted EMTALA to "address a growing concern with preventing 'patient dumping', the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions were stabilized." Power v. Arlington Hospital Ass'n, 42 F.3d 851, 856 (4th Cir. 1994).

EMTALA was not intended to duplicate preexisting legal protections but to create a new cause of action for refusal to treat. Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1041 (D.C. Cir. 1991). The aim was to get patients into the system who would be turned away for non-medical reasons and otherwise go untreated. Bryan v. Rectors and Visitors of University of Virginia, 95 F.3d 349, 351 (4th Cir. 1996). In recognition of EMTALA's limited intent, case law has been explicit and consistent in refusing to interpret it as authorizing a private federal remedy for alleged malpractice. Marshall v. E.Carroll Parish Hospital Service District, 134 F.3d 319, 322 (5th Cir. 1998); Bryan, supra at 351; Vickers v. Nash General Hospital, Inc., 78 F.3d

5

139, 141 (4th Cir. 1996); Baber v. Hospital Corp. of America, 977 F.2d 872, 880 (4th Cir. 1992);

Cleland v. Bronson Health Care Group, Inc. 917 F.2d 266, 268 (6th Cir. 1990).

In this case, it is undisputed that the plaintiff had an initial screening consisting of an

EKG, lab tests, establishment of an IV line, application of a cardiac monitor and a history and

physical examination conducted by a board certified emergency medicine physician. While

plaintiffs will argue that things should have been done faster and other interventions considered,

they cannot point to the absence of a screening examination or the beginning of interventions to

attempt to stabilize an as yet undiagnosed condition. They seek to allege disparate treatment

because at some point after this process was underway, the leads off alarm at the central nurses

station was silenced, possibly preventing earlier intervention. EMTALA prohibits disparate

treatment in the initial screening only. In Vickers v. Nash General Hospital, Inc., supra, the

deceased's estate brought action against the hospital alleging that the deceased received less

treatment than others with the same condition. The Court held that the allegations were

insufficient to state an EMTALA claim. The plaintiff's claim asserted that the deceased should

have been tested for an intracranial injury after coming to the emergency department for head

lacerations. The complaint, while offering evidence that patients suffering from severe head

injury usually receive such an evaluation, ignored the distinction between the initial exam

received and the correctness of the following treatment. Vickers, 78 F.3d at 143. The court held

that because the patient was not diagnosed with a severe head injury, the hospital did not violate

EMTALA by failing to offer further screening since EMTALA inquires only into the uniformity

of the initial screening examination.

Likewise, in Marshall v. E. Carroll Parish Hospital Service District, supra, the plaintiff

alleged that the defendant failed to conduct an appropriate screening by failing to conduct tests

6

designed to discover a cerebro-vascular accident. The court affirmed the grant of summary judgment for the hospital because the plaintiff's complaint was not supported by evidence of other patients with similar symptoms and how the plaintiff's treatment may have differed. Marshall, 134 F.3d at 324.

In Summers v. Baptist Medical Center Arkadelphia, 91 F.3d 1132 (8th Cir. 1996), the plaintiff alleged that the hospital violated EMTALA by failing to conduct an x-ray after he complained of popping noises in his chest. The court held that something more than negligence in the screening process must be shown to make out a federal claim under EMTALA and characterized the failure to obtain the x-ray as negligence only. To rule otherwise, the Court stated, would be inconsistent with EMTALA's objective of preventing dumping and because negligence is always non-uniform. See also, Baber, supra, 977 F.2d at 879; Gerber v. Northwest Hospital Center, Inc., 943 F.Supp. 571, 577 (D. Md. 1996); 42 U.S.C. §1395dd(a).

Plaintiffs' claim is that she received disparate treatment because she did not receive cardiac monitoring. This is certainly not undisputed and the evidence is that the hospital attempted to provide the patient with cardiac monitoring but that the patient's continued removal of the leads led to the silencing of one of the alarms. While this is arguably negligent and not optimal care, it is not the kind of refusal to treat that EMTALA was intended to prevent.

## II.    EMTALA DOES NOT AUTHORIZE PRIVATE CIVIL ACTIONS AGAINST INDIVIDUAL PHYSICIANS.

The short argument is that EMTALA does not permit a civil action against an individual physician; certainly the plaintiffs have not demonstrated that it does. The circuits that have considered this issue have held that EMTALA does not provide a private cause of action against a physician. Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256-7 (9th Cir. 1995); King v. Ahrens, 16 F.3d 265, 271 (8th Cir. 1994); Delaney v. Cade, 986 F.2d 387, 393-4 (10th Cir. 1993); Baber, supra, 977 F.2d at 878; Gatewood, supra, 933 F.2d at 1040 n.1. See also, Mazurkiewicz v. Doylestown Hospital, 223 F.Supp. 2d 661, 666-7 (EDPA 2002).

8

## CONCLUSION

Based upon the facts, reasons and authorities discussed herein, it is submitted that there are at least genuine issues of material fact as to whether defendant provided disparate treatment to the decedent which implicates EMTALA.

Moreover, it is undisputed that EMTALA does not provide a private, civil remedy against defendant Dr. Lebman.

Therefore, defendants ask that plaintiffs' motion be denied.

PRICKETT, JONES & ELLIOTT, P.A.

BY:  MASON E. TURNER, JR., NO. 661
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DE  19899-1328
(302) 888-6508
ATTORNEY FOR DEFENDANT
BAYHEALTH MEDICAL CENTER, INC.
DELMARVA EMERGENCY PHYSICIANS, LLP
AND RONALD I. LEBMAN, M.D.
E-MAIL:  METURNER@PRICKETT.COM

DATED:      May 25, 2006.

9

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

GLADYS BAILEY, as the Administratrix of
the Estate of DEBBIE BAILEY, deceased, and
DOMINICK BAILEY, DEMETRIA BAILEY,
Individually and as Guardian for AMBER
BAILEY, a minor, and TIA BAILEY,

Plaintiffs,

v.

RONALD I. LEBMAN, M.D., DELMARVA
EMERGENCY PHYSICIANS, LLP and
BAYHEALTH MEDICAL CENTER, INC.,
d/b/a KENT GENERAL HOSPITAL,

Defendants.

C.A. No. 04-1540 GMS

JURY TRIAL BY TWELVE PERSONS
DEMANDED.

## CERTIFICATE OF SERVICE OF
## DEFENDANTS' BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I HEREBY CERTIFY, that on May 25, 2006, I electronically filed Defendants' Brief in

Opposition to Plaintiffs' Motion for Partial Summary Judgment, together with Certificate of

Service, with the Clerk of Court using CM/ECF which will send notification of such filing(s) to

the following:

STEPHEN B. POTTER, ESQ.
POTTER, CARMINE & LEONARD, P.A.
840 N. UNION ST.
P.O. BOX 514
WILMINGTON, DE 19899

LEON AUSSPRUNG, ESQ.
THOMAS KLINE, ESQ.
JOSHUA VAN NAARDEN, ESQ.
KLINE & SPECTOR, P.C.
1525 LOCUST ST., 19TH FLOOR,
PHILADELPHIA, PA 19102

I HEREBY CERTIFY that on May ___, A.D. 2006, I have mailed by United States Postal Service the documents to the following non-registered participants:

PRICKETT, JONES & ELLIOTT, P.A.

BY: MASON E. TURNER, JR., No. 661
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DE  19899-1328
(302) 888-6508
ATTORNEY FOR DEFENDANTS
BAYHEALTH MEDICAL CENTER, INC.
DELMARVA EMERGENCY PHYSICIANS, LLP
AND RONALD I. LEBMAN, M.D.
E-Mail: METurner@prickett.com

May 25, 2006.