POINT FOR CHARGE NO. 24

**NATURE OF THE CASE**

In this case, Plaintiffs, Gladys Bailey, as the Administratrix of the Estate of Debbie Bailey, deceased, and Dominick Bailey, Demetria Bailey, Individually and as guardian for Amber Bailey, a minor, and Tia Bailey, are suing to recover damages that they claim arose from injuries suffered as a result of medical negligence on the part of Dr. Ronald I Lebman his employer, Delmarva Emergency Medical Physicians, LLP and Bayhealth Medical Center Inc., d/b/a Kent General.  Plaintiffs claim that Debbie Bailey was improperly treated by Dr. Lebman and the medical and nursing personnel at Bayheath Medical Center; Plaintiffs claim that all defendants failed to properly diagnose, monitor and treat Debbie Baileys cardiac condition and did not provide her with an appropriate medical screening examination in violation of the Emergency Medical Treatment and Active Labor Act [42 U.S.C.A. § 1395dd] resulting in her death.

DEL. P.J.I. CIV. § 3.4 (2000).

Source:
Chesapeake & Potomac Tel. Co. v. Chesapeake Utilities Corp., Del. Supr., 436 A.2d 314, 338 (1981); Greenplate v. Lowth, Del. Supr., 199 A. 659, 662-63 (1938). See also 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 70.01 (4th ed. 1987).


**[DEFENDANTS OBJECT ATTACHED ARE DEFENDANTS PROPOSED POINT FOR CHARGE]**

**POINT FOR CHARGE NO. 25**

**PLAINTIFF'S CONTENTIONS**

    (1)      Whether defendant Lebman breached accepted standards of care while treating Debbie Bailey.

    (2)      Whether defendant Lebman's breach(es) of the standard of care was (were) a proximate cause of Debbie Bailey's injuries and death. **[DEFENDANTS OBJECT TO NO. 2]**

    (3)      Whether defendant Bayhealth Medical Center or its agents/employees breached accepted standards of care while treating Debbie Bailey.

    (4)      Whether defendant Bayhealth Medical Center's (or its agents/employees) breach(es) of the standard of care was (were) a proximate cause of Debbie Bailey's injuries and death.

    (5)      Whether Dr. Lebman violated the appropriate medical screening requirement of the Emergency Medical Treatment and Active Labor Act [42 U.S.C.A. § 1395dd] while treating Debbie Bailey.   **[DEFENDANTS OBJECT TO NO. 5]**

    (6)      Whether Dr. Lebman's violation of the appropriate medical screening requirement of the Emergency Medical Treatment and Active Labor Act [42 U.S.C.A. § 1395dd] while treating Debbie Bailey was (were) a proximate cause of Debbie Bailey's injuries and Death.  **[DEFENDANTS OBJECT TO NO. 6]**

    (7)      Whether Bayhealth Medical Center's (or its agents/employees) violated the appropriate medical screening requirement of the  Emergency Medical Treatment and Active Labor Act [42 U.S.C.A. § 1395dd] while treating Debbie Bailey.

    (8)      Whether Bayhealth Medical Center's (or its agents/employees) violation of the appropriate medical screening requirement of the  Emergency Medical Treatment and Active Labor Act [42 U.S.C.A. § 1395dd] was (were) a proximate cause of Debbie Bailey's injuries and death.

    (9)      The extent of damages suffered by Plaintiffs as a result of the negligence of all/each defendants.

       The defendants deny any negligence and that such negligence was a cause of Debbie Bailey's injuries and death.  **[DEFENDANTS OBJECT TO THIS PARAGRAPH]**

DEL. P.J.I. CIV. § 3.2 (2000).

**POINT FOR CHARGE NO. 26**

**AGENCY OF TREATING DOCTORS AND NURSES**

      The Plaintiffs seek to recover damages from several defendants on grounds that they are liable for the negligence of the doctors, nurses, and other staff whose conduct is the subject of this lawsuit.

      Because Dr. Lebman is an employee of Delmarva Emergency Medical Physicians, LLP, it is responsible for his acts.   **[DEFENDANTS OBJECT TO PARAGRAPH 2]**

      Because the nurses and hospital staff are employees of Bayhealth Medical Center, Inc., it is responsible for their acts.

DEL. P.J.I. CIV. § 7. (2000).

Source:

Greco v. University of Delaware, Del. Supr., 619 A.2d 900, 903-04 (1993); Reyes v. Kent General Hosp., Inc., 487 A.2d 1142, 1144 (1984); Timblin v. Kent Gen. Hosp., Del. Super., C.A. No. 90C-03-122, Quillen, J. (Oct. 4, 1995) (jury instruction).

**POINT FOR CHARGE NO. 27**

**AGENT'S NEGLIGENCE IMPUTED TO PRINCIPAL**

  If you find that Debbie Bailey died as a result of a negligent act committed by an agent or employee of Delmarva Emergency Medical Physicians LLC or Bayhealth Medical Center, Inc., while acting within the scope of his/her employment and/or agency, then that negligence is the legal responsibility of Delmarva Emergency Medical Physicians LLC or Bayhealth Medical Center, Inc.

  An agent is one who acts for another, known as a principal, on the principal's behalf and subject to the principal's control and consent.

DEL. P.J.I. CIV. § 18.1 (2000).

Source:
Fisher v. Townsends, Inc., Del. Supr., 695 A.2d 53 (1997)(discussing in great detail the various agency relationships); Billops v. Magness Constr. Co., Del. Supr., 391 A.2d 196, 198-99 (1978); Eastern Memorial Consultants, Inc. v. Greenlawn Memorial Park, Inc., Del. Supr., 364 A.2d 821 (1976)(principal is not employer of a sub-agent hired by principal's agent); Fields v. Synthetic Ropes, Inc., Del. Supr., 215 A.2d 427, 432-33 (1965); Richardson v. John T. Hardy & Sons, Inc., Del. Supr., 182 A.2d 901, 902-03 (1962). See also RESTATEMENT (SECOND) OF AGENCY § 1 (1983).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 28**

**AGENCY ADMITTED**

It has been admitted in legal documents filed in this case that, at all times relevant to this litigation, physicians, nurses, and other staff at Bayhealth Medical Center, Inc, were employees acting within the scope of employment and were the agents of Bayhealth Medical Center Inc.

As a matter of law, therefore, Bayhealth Medical Center, Inc. is equally responsible with the physicians, nurses, and other staff at Bayhealth Medical Center, Inc. for any acts or omissions they may have committed at the time of the incident.

DEL. P.J.I. CIV. § 18.2 (2000).

Source:
Fields v. Synthetic Ropes, Inc., Del. Supr., 215 A.2d 427, 432-33 (1965).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 29**

**CAUSATION**

When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization.

If the victim might have been saved by a precaution which the defendant negligently omitted, the omission is deemed to have caused the harm, even though it is not possible to demonstrate conclusively that the precaution would in fact have saved the victim.

Sources:

Kirincich v. Standard Dredging Co. 112 F.2d 163 (3d Cir. 1940); Zinnel v. United States Shipping Board, 10 F.2d 47 (2d Cir. 1925)

Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280; quoting Hicks v. United States, 368 F.2d 626, 632 (4th Cir. 1966)

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 30**:

**PLAINTIFF SUSCEPTIBLE TO INJURY**

   The law provides that the defendant in a medical negligence case must take the plaintiff as he finds her. One who causes injury to another is liable for all the resulting injuries to the plaintiff, regardless of the nature or severity of those injuries.

DEL. P.J.I. CIV. § 21.4 (2000).

Source:
Reese v. Home Budget Ctr., Del. Supr., 619 A.2d 907, 910 n.1 (1992); Lipscomb v. Diamiani, Del. Super., 226 A.2d 914, 918 (1967). See also PROSSER & KEETON ON TORTS § 43 (5th ed. 1984).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 31**:

**DAMAGES - WRONGFUL DEATH**

The law recognizes that when a person dies as the result of another's wrongful conduct, there is injury not only to the deceased but also to immediate family members. While it is impossible to compensate the deceased for the loss of Debbie Bailey's life, it is possible to compensate certain family members for the losses that they have suffered from the death of a loved one. For this reason, Delaware law provides that when a person dies as a result of another's wrongful act, certain family members may recover fair compensation for their losses resulting from the death. In determining a fair compensation, you may consider the following:

(1)    the loss of the expectation of monetary benefits that would have resulted from the continued life of Debbie Bailey; that is, the expectation of inheritance that his children, Dominick Bailey, Demetria Bailey, Individually and as guardian for Amber Bailey, a minor, and Tia Bailey have lost; **[DEFENDANTS OBJECT TO NO. 1]**

(2)    the loss of the portion of Debbie Bailey's earnings and income that probably would have been used for the support of his children, Dominick Bailey, Demetria Bailey, Individually and as guardian for Amber Bailey, a minor, and Tia Bailey; **[DEFENDANTS OBJECT TO NO. 2]**

(3)    the loss of Debbie Bailey's parental and household services, including the reasonable cost of providing for the care of minor children;

(4)    the reasonable cost of funeral expenses, not to exceed $2000; and

(5)    the mental anguish suffered by Dominick Bailey, Demetria Bailey, Amber Bailey and Tia Bailey as a result of Debbie Bailey's death.

The term "mental anguish" encompasses the grieving process associated with the loss of a loved one. You may consider that the grieving process, accompanied by its physical and emotional upheaval, will be experienced differently by different people, both in its intensity and in its duration. The ability to cope with the loss may be different for each person.

There is no fixed standard or measurement. You must determine a fair and adequate award through the exercise of your judgment and experience after considering all the facts and circumstances presented to you during the trial. While the Estate of Debbie Bailey carries the burden of proving damages by a preponderance of the evidence, the Estate is not required to claim and prove with mathematical precision exact sums of money representing their damages for mental anguish. It is required only that the Estate furnish enough evidence so that you, the jury, can make a reasonable determination of those damages.    DEL. P.J.I. §22.8 (2000)

Source:
10 Del. C. §3724 (Wrongful Death Statute) (as amended June 14, 1999). Bennett v. Andree, Del. Supr., 252 A.2d 100, 101-03 (1969); Gill v. Celotex Corp., Del. Super., 565 A.2d 21, 23-24 (1989) (mental anguish); Saxton v. Harvey & Harvey, Del. Super., C.A. No. 85C-JL-3, Poppiti, J. (April 14, 1987); Sach v. Kent Gen. Hosp., Del. Super., 518 A.2d 695, 696-97 (1986) (claim by surviving parents); Okie v. Owens, Del. Super., C.A. No. 83C-AP-15, Poppiti, J. (October 16, 1985). See also Frantz v. United

States, D. Del., 791 F. Supp. 445, 448 (1992) (proper beneficiaries of claim for wrongful death); Johnson v. Physicians Anesthesia Serv., D. Del., 621 F. Supp., 908, 915-16 (1985) (action and potential damages arise only after time of death).

**POINT FOR CHARGE NO. 32**:

**DAMAGES - SURVIVAL ACTION - PAIN AND SUFFERING**

The Estate may also recover damages for the conscious pain and suffering experienced by Debbie Bailey from the time of injury until death.

The damages for pain and suffering must be fair and reasonably determined and may not be determined by a fanciful or sentimental standard.  They must be determined from a conclusion about how long the suffering lasted, the degree of suffering, and the nature of the injury causing the suffering.  In evaluating pain and suffering, you may consider its mental as well as its physical consequences.  You may also consider such things as discomfort, anxiety, grief, or other mental or emotional distress that may accompany any deprivation of usual pleasurable activities and enjoyments.

The law does not prescribe any definite standard by which to compensate an injured person for pain and suffering or impairment, nor does it require that any witness should have expressed an opinion about the amount of damages that would compensate for such injury.  Your award should be just and reasonable in light of the evidence and reasonably sufficient to compensate Debbie Bailey fully and adequately.

DEL. P.J.I. §22.4

Source: 10 Del. C. §3701; Magee v. Rose, Del. Super., 405 A.2d 143 (1979).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 33**

**DAMAGES - SURVIVAL ACTION - PUNITIVE DAMAGES**

If you find against Dr. Lebman, Delmarva Emergency Medical Physician, LLP or Bayhealth Medical Center, Inc., you must determine whether they are also liable to Debbie Bailey's Estate for punitive damages.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate the plaintiff for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages for the purpose of punishing the person doing the wrongful act and to discourage such persons and others from similar wrongful conduct in the future. You may award punitive damages to punish Dr. Lebman, Delmarva Emergency Medical Physician, LLP or Bayhealth Medical Center, Inc. for outrageous conduct and to deter them, and others like them, from engaging in similar conduct in the future if you find by a preponderance of the evidence that Dr. Lebman, Delmarva Emergency Medical Physician, LLP or Bayhealth Medical Center, Inc. acted recklessly. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct refers to conscious awareness. Reckless conduct refers to conscious indifference. Each requires that the defendant foresee that his or her conduct threatens a particular harm to another. Reckless conduct is a conscious indifference that amounts to a "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that he or she knows or should know that there is an eminent likelihood of harm that can result.

The law provides no fixed standards for the amount of punitive damages but leaves the amount to your sound discretion, exercised without passion or prejudice. In determining any award of punitive damages, you must consider the following: the reprehensibility or outrageousness of the conduct of Dr. Lebman, Delmarva Emergency Medical Physician, LLP or Bayhealth Medical Center, Inc. and the amount of punitive damages that will deter them and others like them from similar conduct in the future. You may consider the financial condition of Dr. Lebman, Delmarva Emergency Medical Physician, LLP or Bayhealth Medical Center, Inc. for this purpose only. Their financial condition must not be considered in assessing compensatory damages. Any award of punitive damages must bear a reasonable relation to the Estate's compensatory or nominal damages. If you find that the Estate of Debbie Bailey is entitled to an award of punitive damages, you must state the amount of punitive damages separately on the verdict form.

DEL. P.J.I. §22.27

Source:
Devaney v. Nationwide Mut. Auto Ins. Co., Del. Supr., 679 A.2d 71, 76-77 (1996); Tackett v. State Farm Fire and Cas. Ins. Co., Del. Supr., 653 A.2d 254, 265-66 (1995) (punitive damages available in bad faith action if breach is particularly egregious); Jardel Co. v. Hughes, Del. Supr., 523 A.2d 518, 527-31 (1987); Saxton v. Harvey & Harvey, Del. Super., C.A. No. 85C-JL-3, Poppiti, J. (Apr. 14, 1987)

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE 34:**

**DAMAGES - PUNITIVE DAMAGES - EMPLOYER OF TORTFEASOR**

You may award punitive damages against Bayhealth Medical Center Inc., because of the acts of Dr. Lebman or any of the doctors nurses or medical providers employed by Bayhealth Medical Center, Inc., if one of the following conditions is met:

(1)     Bayhealth Medical Center Inc., authorized the doing and manner of Dr. Lebman's action, or;

(2)     Dr. Lebman was unfit and Delmarva Emergency Medical Physicans, LLC was reckless in employing him, or;

(3)     The doctors, nurses or medical providers employed by Bayhealth Medical Center, Inc., were unfit and Bayhealth Medical Center was reckless in employing them, or;

(4)     Dr. Lebamn was employed in a managerial capacity and was acting within his scope of employment, or;

(5)     Bayhealth Medical Center ratified or approved Dr. Lebman's action, or;

(6)     The doctors, nurses or medical providers employed by Bayhealth Medical Center, Inc., were reckless in turning off Debbie Bailey's cardiac monitor alarm, or;

(7)     Dr. Lebman was reckless in turning off Debbie Bailey's cardiac monitor alarm.

[Comment: The Court will determine whether a party is a principal/employer as a matter of law.  This instruction should be used only if an instruction for punitive damages is to be given against the individual tortfeasor and should be given immediately following the general instruction on "Punitive Damages" (21.27).  The special verdict form should reflect that punitive damages may only be awarded against a principal/employer if punitive damages have first been awarded against the tortfeasor.]

Source:
Ramada Inns, Inc. v. Dow Jones & Co., Del. Super., C.A. No. 83C-AU-56, Poppiti, J., at 3 (Feb. 9, 1988) (citing DiStephano v. Hercules, Inc., Del. Super., C.A. No. 83C-JN-24, Taylor, J. (June 4, 1985) and Roberts v. Wilmington Medical Center, Inc., Del. Super., Del. Super., 345 C.A. No. 1977, Christie, J. (Apr. 28, 1978)); RESTATEMENT (SECOND) of TORTS § 909 (1965); Porter v. Pathfinder Services, Inc., Del. Supr., 683 A.2d 40, 42 (1996) (employer-employee relationship determined as a matter of law).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 35**:

**EFFECT OF INSTRUCTIONS AS TO PUNITIVE DAMAGES**

  The fact that I have instructed you about the proper measure of punitive damages should not be considered as an indication that the Estate of Debbie Bailey is entitled to recover punitive damages from Dr. Lebman and Bayhealth Medical Center, Inc.  The instructions on punitive damages are given only for your guidance, in the event you find in favor of the Estate of Debbie Bailey on their claims for punitive damages.

DEL. P.J.I. §22.29

Source:
3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS §74.02 (4TH ed. 1987).


       **[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 36**

**DEPOSITION - USE AS EVIDENCE**

Some testimony is in the form of sworn recorded answers to questions asked of a witness before the trial. This is known as deposition testimony. This kind of testimony is used when a witness, for some reason, cannot be present to testify in person. You should consider and weigh deposition testimony in the same way as you would the testimony of a witness who has testified in court.

DEL. P.J.I. CIV. § 23.5 (2000).

Source:
Del. C. Super. Ct. Civ. R. 32(a); D.R.E. 804(a)(5); Firestone Tire & Rubber Co. v. Adams, Del. Supr., 541 A.2d 567, 572 (1988). See also 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 73.02 (4th ed. 1987).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 37**

**USE OF REQUESTS FOR ADMISSIONS AT TRIAL**

Some of the evidence has been in the form of written admissions. You must regard as being conclusively proven all facts that were expressly admitted by the defendants or all facts which the defendants' failed to deny.

DEL. P.J.I. CIV. § 23.7 (2000).

Source:
Del. C. Super. Ct. Civ. R. 36(b). See also 3 DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 72.17 (4th ed. 1987).

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 38**

**APPROPRIATE MEDICAL SCREENING EXAMINATION- DEFINITION**

The term "appropriate medical screening examination means a screening to determine the existence of an emergency medical condition that is the same or similar to the screening provided to all patients presenting to the emergency department or emergency room complaining of the same condition or exhibiting the same symptoms or condition.

FED-JI § 176.30

The term 'appropriate medical screening examination" has specific meaning in the context of EMTALA. See 42 U.S.C.A. § 1395dd(a). The purpose of the screening is to determine whether or not an 'emergency medical condition' as defined by the statute exists. 42 U.S.C.A. § 1395dd(a).

The screening examination is not "appropriate" if it is different than the exam given to other patients presenting with the same or similar symptoms, complaints, or conditions. In re Baby K, 16 F.3d 590, 593 (4th Cir.) cert. denied, 513 U.S. 825, 115 S.Ct. 91, 130 L.Ed.2d 42(1994); Summers v. Baptist Med. Center Arkadelphia, 91 F.3d 1132, 1139 (8th Cir.1996). **[DEFENDANTS OBJECT TO PARAGRAPH 3]**

Source:

Hospital Liability as to Diagnosis and Care of Patients in Emergency Room, 58 A.L.R.Sth 613

Construction and Application of Emergency Medical Treatment and Active Labor Act (42 U.S.C.A. § 1395dd), 104 A.L.R.Fed. 166

**POINT FOR CHARGE NO. 39**

**EMERGENCY MEDICAL CONDITION- DEFINITION**

The term "emergency medical condition" means "a medical condition manifesting itself by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part."

FED.-JI § 176.31

Source:

42 U.S.C.A. § 1395dd(e)(1).

The term emergency medical condition does not equate with "any" medical condition. "A patient who suffers an emergency medical condition is in imminent danger of death or serious disability." Thornton v. Southwest Detroit Hospital, 895 F.2d 1131, 1134 (6th Cir.1990).
**DEFENDANTS OBJECT TO PARAGRAPH 2]**

The EMTALA requires some "manifestation of acute symptoms so the hospital would know of the" emergency medical condition. Urban v. King, 43 F.3d 523, 524 (10th Cir.1994). See also 42 U.S.C.A. § 1395dd(e)(l)(A). **[DEFENDANTS OBJECT TO PARAGRAPH 3]**

Hospital Liability as to Diagnosis and Care of Patients in Emergency Room, 58 A.L.R.Sth 613

Construction and Application of Emergency Medical Treatment and Active Labor Act (42 U.S.C.A. § l395dd), 104 A.L.R. Fed. 166

Treatises and Practice Aids
Lewis & Norman, Litigating Civil Rights and Employment Discrimination Cases (1999)

Smolla, Federal Civil Rights Acts (3d ed. 1994)

This instruction was cited with approval in Hunt ex rel. G. Hunt v. Lincoln County Memorial Hospital, 317 F.3d 891, 893 n.4 (8th Cir.2003).

**POINT FOR CHARGE NO. 40**

**EMTALA VIOLATION-INSTRUCTION**

Plaintiffs have alleged that defendant Bayhealth/Kent General Hospital violated a federal statute known as EMTALA — the Emergency Treatment and Active Labor Act. For the purpose of this case, this statute requires that all emergency department patients receive a medical screening examination. The "medical screening examination" is an examination of the patient performed by a doctor and is ongoing until the doctor decides whether or not the patient has an actual emergency medical condition.  To prove a violation of the statute, Plaintiffs have the burden of proving by a preponderance of evidence that:

    1.  Debbie Bailey came to the emergency department of Bayhealth/Kent General Hospital;

    2.  A request was made for examination or treatment for a medical condition;

    3.  A doctor did not perform complete a medical screening examination of Debbie Bailey

**DISPARATE TREATMENT**

In addition to requiring that hospitals provide every patient with a examination, EMTALA prohibits the hospital from providing Plaintiff with a medical screening examination that is in inferior to that provided to other patients who have the same or similar complaints. If the hospital has a standard practice, policy or procedure concerning a patient's complaint, such as chest pain, the hospital is required to apply that same standard practice to all patients with that complaint. The medical screening examination includes physical examination by the doctor, monitoring interventions such as oxygen, laboratory studies, and testing.

As I said, the Plaintiff must prove three facts to show that defendant Bayeheath/Kent General Hospital violated EMTALA. In this case, the parties agree that the first two facts are true- that is, the parties agree that Debbie Bailey came to the emergency department of Bayhealth/Kent General Hospital and that she requested examination or treatment for a potential emergency medical condition. Thus, if you find that Plaintiffs have proven that Defendant Bayhealth/Kent General Hospital did not perform a complete medical screening examination on Plaintiff or that Defendant Bayhealth/Kent General Hospital failed to treat Plaintiff the same as other patients with the same or similar complaints, then you must find for the Plaintiff and against the Defendant Bayhealth/Kent General Hospital. If, on the other hand, you find that the hospital did perform a complete medical screening examination of Debbie Bailey and treated her the same as other patients with the same or similar complaints, then you must find for the Defendant Bayhealth/Kent General Hospital against the Plaintiff.

Sources:

42 U.S.C. A. § 1395 dd.

The cause of action authorized by the EMTALA is defined by state substantive law. 42 U.S.C.A. § 1395dd(f). See, e.g., Vazquez Morales v. Estado Libre Asociado de Puerto Rico, 967 F.Supp. 42, 45 (D.P.R.l997). A hospital's liability under the EMTALA is not grounded upon tort concepts; an EMTALA plaintiffs claim does not rest on any proof that the hospital was negligent, but is predicated on the hospital's violation of a federal statute making the hospital strictly liable for any personal harm that directly results from that violation. Griffith v. Mt. Carmel Medical Center, 842 F.Supp. 1359, 1365 (D.Kan.1994), relying on 42 U.S.C.A. § 1395dd(d)(2)(A).

First, the hospital's screening procedures must be "reasonably calculated" to identify an emergency medical condition. *Correa v Hospital San Francisco*, 69 F.3rd 1184, 1192-93 (1st Cir. 1995); *Power v. Arlington Hosp. Ass'n*., 42 F. 3rd. 851, 856 (4th Cir. 1994).

In *Correa*, for example, the First Circuit held that the hospital' "delay in attending to the patient was so egregious and lacking in justification as to amount to an effective denial of a screening examination." 69 F.3d at 1193; *but see Repp v. Andadarko Mun. Hosp.* 43 F.3d 519, 522 (10th Cir. 1994)

The screening procedures must be applied in an "even-handed manner." *Correa*, 69 F.3d at 1193. In this regard, the test is whether the challenged procedure was identical to that provided similarly situated patients, as opposed to whether the procedure was adequate a s judged by the medical profession.

*Eberhardt  v City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995) and *Baber v Hospital Corp. of America*, 977 F.2e 872,884 (4th Cir. 1992) (EMTALA "requires a hospital to develop a screening procedure...and to apply that screening procedure uniformly to all patients with similar complaints.") Eberhardt, 62 F.3d at 1257 ; see also Baber, 977 F.2d at 879.

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 41**

**FAILURE TO PRODUCE AVAILABLE EVIDENCE**

If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.

Fed-JI § 104.26

Source:

Under the "adverse inference", when a party has relevant evidence within its control that the party fails to produce, that failure gives rise to an inference that the evidence is unfavorable to it. *United Auto Workers v. NLRB*, 459 F.2d 1329, 1336 (D.C. Cir.1972); *Rockingham Machine-Lunex Co. v. NLRB,* 665 F.2d 303, 304 (8th Cir. 1981).  See also *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939) (production of weak evidence when strong is available can lead only to conclusion that strong evidence would have been adverse).

When a party destroyed evidence relevant to the dispute being litigated, a "spoliation inference" arises to the effect that the destroyed evidence would have been unfavorable to the position of the offending party. *Schmid v. Milwaukee Elec. Tool Corp*., 13 F.3rd 76 (3rd Cir. 1994)

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 42**

**SPOLIATION/DESTRUCTION OF EVIDENCE**

Plaintiffs contend that Bayhealth Medical Center at one time possessed Debbie Bailey's cardiac monitor printouts. However, Defendants contend that the loss of evidence was accidental.

You may assume that such evidence would have been unfavorable to Bayhealth Medical Center only if you find by a preponderance of he evidence that:

1. Defendants intentionally destroyed the evidence or caused the evidence to be destroyed; and

2. Defendants destroyed the evidence or caused the evidence to be destroyed in bad faith.

Fed. Civ-J17§ 1.20

Source:

See Miksis v. Howard, 106 F.3d 754, 762-763 (7th Cir. 1997) (party seeking adverse inference must prove that other party intentionally destroyed evidence in bad faith). The Seventh Circuit "requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" to support a missing or destroyed evidence instruction. Spesco, Inc. v. General Elec. Co., 719 F.2d 233, 239 (7th Cir. 1983); see also Adkins v. Mid-America Growers, Inc., 141 F.R.D. 466, 473 (ND. Ill. 1992) ("In cases where evidence has been intentionally destroyed, it may be presumed that the materials were relevant."). If the facts are not in dispute, the court ordinarily will decide the sanction for an intentional and bad faith spoliation, which might include an instruction with an inference such as that set forth in this instruction.

**[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 43**

**JURY DELIBERATIONS**

How you conduct your deliberations is up to you. But I would like to suggest that you discuss the issues fully, with each of you having a fair opportunity to express your views, before committing to a particular position. You have a duty to consult with one another with an open mind and to deliberate with a view to reaching a verdict. Each of you should decide the case for yourself, but only after impartially considering the evidence with your fellow jurors. You should not surrender your own opinion or defer to the opinions of your fellow jurors for the mere purpose of returning a verdict, but you should not hesitate to reexamine your own view and change your opinion if you are persuaded by another view.
Your verdict, whatever it is, must be unanimous.

[EXCUSE JURY ALTERNATES--SWEAR BAILIFF]

DEL. P.J.I. CIV. § 24.5 (2000).

Source:
Hyman Reiver & Co. v. Rose, Del. Supr., 147 A.2d 500, 505-07 (1958)(the private deliberations of the jury should not be a concern of the court).


_____     **[DEFENDANTS OBJECT]**

**POINT FOR CHARGE NO. 44**

**INSTRUCTIONS TO BE CONSIDERED AS A WHOLE**

I have read a number of instructions to you. The fact that some particular point may be covered in the instructions more than some other point should not be regarded as meaning that I intended to emphasize that point. You should consider these instructions as a whole, and you should not choose any one or more instructions and disregard the others. You must follow all the instructions that I have given you.

DEL. P.J.I. CIV. § 24.3 (2000).

Source:
DEL. CONST. art. IV, § 19; Culver v. Bennett, Del. Supr., 588 A.2d 1094, 1096 (1991)(instructions to be considered as a whole); Sirmans v. Penn, Del. Supr., 588 A.2d 1103, 1104 (1991)(instructions are not in error if they correctly state the law, are reasonably informative and not misleading judged by common practices and standards of verbal communication); Dawson v. State, Del. Supr., 581 A.2d 1078, 1105 (1990)(jury instructions do not need to be perfect); Probst v. State, Del. Supr., 547 A.2d 114, 119 (1988)(entire charge must be considered as a whole); Haas v. United Technologies Corp., Del. Supr., 1173, 1179 (1982), appeal dismissed, 459 U.S. 1192, 103 S. Ct. 1170, 75 L.Ed.2d 423 (1983); State Hwy. Dep't v. Bazzuto, Del. Supr., 264 A.2d 347, 351 (1970); Cloud v. State, Del. Supr., 154 A.2d 680 (1959); Philadelphia B. & W. R.R. Co. v. Gatta, Del. Supr., 85 A. 721, 729 (1913)(jury is sole judge of facts).

**[DEFENDANTS OBJECT]**