IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GLADYS BAILEY, as the Administratrix : 
of the Estate of DEBBIE BAILEY,       :   C.A. No. 04-1540-GMS
deceased, et al                        :
                                       :
    v                                  :
                                       :
RONALD I. LEBMAN, M.D., et al          :

**PLAINTIFFS' REPLY TO DEFENDANTS'
RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT CONCERNING DEFENDANTS' EMTALA VIOLATION**

I.  **INTRODUCTION**

Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment raises two major issues that require clarification. First, defendants claim that the undisputed evidence does not establish their failure to perform an appropriate medical screening examination. However, defendants completely fail to cite to any facts of record in this case supporting their conclusion. Second, defendants claim that EMTALA does not permit a private cause of action against an individual physician. Plaintiffs agree that the EMTALA cause of action in this case is against only the hospital defendant, Bayhealth Medical Center, Inc., d/b/a Kent General Hospital ("defendant Kent General Hospital"). Additionally, defendants have made several other incorrect representations that require clarification.

II. **DEFENDANTS FAIL TO CITE TO ANY FACT IN THE RECORD TO SUPPORT THEIR OPPOSITION TO SUMMARY JUDGMENT**

Although defendants argue that the record in this case is not undisputed with regard to their failure to provide an appropriate medical screening examination, defendants fail to cite to a single fact in the record to support their conclusion. The facts are undisputed that up until the time she

was found unresponsive, Ms. Bailey ("decedent") was being evaluated for a **potential** emergency medical condition. The defendants' own admissions, made by defendant Lebman and the nurse employees of defendant Kent General Hospital, as detailed in plaintiffs' Motion, conclusively establishes that, at the time Ms. Bailey was found unresponsive, her medical screening examination was ongoing. Defendants have admitted that an integral part of this medical screening examination was continuous cardiac monitoring and that this monitoring was stopped (that the alarm was silenced). Finally, defendants have admitted that at the point in time when continuous cardiac monitoring was stopped, there had not yet been a determination as to whether or not Ms. Bailey actually suffered from an emergency medical condition. Consequently, because Ms. Bailey was treated disparately from other patients presenting with signs and symptoms of chest pain, by the discontinuation of her continuous cardiac monitoring, she was treated disparately from other similarly situated patients. The law is clear that this is an EMTALA violation.

### III. AN INITIAL SCREENING IS NOT A COMPLETE MEDICAL SCREENING EXAMINATION

Defendants insist that decedent had "an initial screening." However, defendants confuse an "initial screening" with the term of art of an "appropriate medical screening examination." An appropriate medical screening examination for EMTALA purposes is specifically defined by the statute at 42 U.S.C. § 1395dd(e)(1). Moreover, at 42 U.S.C. § 1395dd(a), a medical screening examination is specifically defined to include: "ancillary services routinely available to the emergency department." See also Baber v. Hospital Corp. of America, 977 F.2d 872, 879 n.6 (4th Cir. 1992). Consequently, unlike an "initial screening," an EMTALA medical screening examination does not occur at a single point in time. To the contrary, the medical screening examination is an ongoing examination that occurs during the time period between presentation and when the

physician and/or hospital determines that an emergency medical condition either does or does not exist. See Bergwall v. MGH Health Services, Inc, 243 F.Supp.2d 364, 371 (D. Maryland 2002). The defendants have admitted, as cited to in plaintiffs' instant Motion, that at the time decedent was found unresponsive there had not yet been a determination as to whether or not Ms. Bailey actually had an emergency medical condition and that the medical screening examination for Ms. Bailey was ongoing. It was during this time period that continuous cardiac monitoring did not occur. Because continuous cardiac monitoring is required as part of the medical screening examination, Ms. Bailey was treated disparately from other similarly situated patients being evaluated for heart attacks. This is a violation of EMTALA law.

### IV. DEFENDANTS INSIST THAT ONLY THE "LEAD-OFF ALARM WAS SILENCED."

Defendants have repeatedly insisted that Ms. Bailey had continuous cardiac monitoring, but that the "leads-off alarm was silenced" or that Ms. Bailey's removal of the leads "led to the silencing of one of the alarms." This is a gross mischaracterization of the situation. While defendants insist that Ms. Bailey was at some point placed on continuous cardiac monitoring, there is no evidence of this in the medical records. There are no continuous monitoring rhythm strips in the chart nor is there an indication that Ms. Bailey was actually placed on continuous cardiac monitoring. Assuming, *arguendo*, if Ms. Bailey was placed on continuous cardiac monitoring, this monitoring was at some point stopped, as admitted to be defendants. It is important to recognize that a cardiac monitor has no independent "leads-off alarm." The continuous cardiac monitoring either alarms for all normal rhythms, which includes disconnecting of the leads, or it does not. The alarms are either on or they are off. Moreover, in the instant case, it is not simply the alarms that were turned off but the entire continuous cardiac monitoring was turned off. There is no evidence that Ms. Bailey was attached to any cardiac monitor at the time she was found unresponsive. Consequently, despite

defendants' insistence that only the "lead-off alarm was silenced," in fact the cardiac monitoring was entirely discontinued.

### IV.   THE ROLE OF THE DELAWARE HEALTH AND SOCIAL SERVICES OFFICE OF HEALTH FACILITIES LICENSING AND CERTIFICATION.

In defendants' Response, they state that the Delaware Health and Social Services Office of Health Facilities Licensing and Certification investigated the circumstances of this case and determined that there was no EMTALA violation. While it is true that this Department of the State of Delaware did investigate defendant Bayhealth Medical Center, Inc. d/b/a Kent General Hospital, plaintiff is uncertain if this department is even charged with determining if an EMTALA violation occurred. What is certain is that this Department of the State of Delaware made no specific finding as to whether or not an EMTALA violation did in fact occur. However, it is important to note that the Delaware Health and Social Services Office of Health Facilities Licensing and Certification did make the determination that the nursing care provided to Ms. Bailey fell below the standard of care and violated several state nursing regulations.

### V.   AN EMTALA CLAIM IS DISTINCT FROM A MEDICAL NEGLIGENCE CLAIM

While it is true that a claim of medical negligence is distinct from an EMTALA violation, there are many instances in which these two distinct claims can overlap. In the instant case, plaintiffs' claim that the EMTALA requirement for an appropriate medical screening examination was not met is based upon the standard practices (and policies) of defendant Kent General Hospital. In the instant case, decedent was treated differently from other similarly situated patients with chest pain that were being evaluated for a potential heart attack. This claim is distinct from plaintiffs' medical negligence claim concerning the standard of care.

In their Response, defendants cite several cases in which EMTALA claims failed because only a claim for negligence was actually made out. These cases entail situations were a plaintiffs complained that: 1) they should have received additional testing for an intra-cranial injury, Vickers v. Nash General Hospital, Inc, 78 F.3d 139 (4th Cir. 1996); 2) they should have received testing for a stroke, Marshall v. E. Carroll Parrish Hospital Service District, 134 F.3d 319 (5th Cir. 1998); and 3) should have received an x-ray, Summers v. Baptist Medical Center Arkadelphia, 91 F.3d 1132 (8th Cir. 1996). Plaintiff agrees that each of these cases represents negligence and not an EMTALA violation. However, the instant case is very different.

Decedent presented with chest pain that radiated to the left arm and was obviously being evaluated for a potential heart attack. All patients with such symptoms are placed on continuous cardiac monitoring at defendant Kent General Hospital, as admitted to by its employees and agents. The fact that decedent did not have continuous cardiac monitoring and was "found" unresponsive and unmonitored is a violation of the hospital's own policies and procedures. While the hospital's failure care for the decedent in the same manner as other similarly situated patients may also be negligent, the evidence is uncontroverted that such a failure is an EMTALA violation.

VI.   **EMTALA DOES NOT PROVIDE A PRIVATE CAUSE OF ACTION AGAINST AN INDIVIDUAL PHYSICIAN.**

Plaintiffs are agreement with defendants that EMTALA does not Provide for a private cause of action against an individual physician. Consequently, the EMTALA claim in this case and the instant Motion for Partial Summary Judgment is only as to defendant Bayhealth Medical Center, Inc., d/b/a Kent General Hospital.

VII.  **CONCLUSION**

For all the reasons discussed herein, as well as those contained within plaintiffs' Motion for Partial Summary Judgment, plaintiffs respectfully request that this Court grant partial summary judgment against defendant Bayhealth Medical Center, Inc., d/b/a Kent General Hospital on the issue of the hospital's committing an EMTALA violation.

Respectfully submitted,

**POTTER, CARMINE & AARONSON, P.A.**

BY:  S/ STEPHEN POTTER
STEPHEN POTTER, ESQUIRE
840 North Union Street
Post Office Box 514
Wilmington, Delaware 19899
(302) 658-8940
Attorney for Plaintiffs

**KLINE & SPECTER**
*A Professional Corporation*

BY: S/ LEON AUSSPRUNG
JOSHUA VAN NAARDEN, ESQUIRE
LEON AUSSPRUNG, ESQUIRE
Attorneys for Plaintiff
Nineteenth Floor
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

Dated: May 31, 2006